*Court of Common Pleas, Dauphin County, January 9th, 1865.*

THE COMMONWEALTH OF PENNSYLVANIA *v.* THE DELAWARE DIVISION CANAL COMPANY.

A taxpayer, having applied to the auditor-general to know whether he owed any taxes to the State, and having been informed by that officer that he did not, is not liable to any penalty for not paying those taxes.

The fact that taxes were paid, and receipts given for subsequent years, will not relieve the taxpayers from money due for preceding years; nor will a letter to them from the auditor-general that no taxes were due by them to the State. The act of 1st May, 1861, does not debar the commonwealth from claiming taxes due prior to its passage.

The State cannot claim interest upon a balance of taxes struck from three months after its settlements, when only part of the amount was legally due by the taxpayer.

BY THE COURT.—There are three points of law raised on the facts proved in the present case, which are undisputed:

1. Is the defendant subject to the penalty of ten per cent. for failing to report to the auditor-general the amount of its dividends, or an appraisement of the value of its capital stock during the year? Such a report was necessary under the thirty-third section of the act of 1844, and is now particularly enjoined by the first and second sections of the act of April, 1858 (Pamphlet Laws, pp. 419–20), which directs all corporations taxable under the laws of this commonwealth, in the month of November of each year, to make such report. The second section of that act provides, that if any such corporationn shall neglect or refuse to make such return, or appraisements, on or before the 31st day of December, annually, there shall be added ten per centum to the tax of such corporation for each year. Was there such a neglect, or refusal, here as would subject this corporation to the penalty? The evidence shows that the officers of this canal company, during the month of November, 1858, was in anxious correspondence with the auditor-general on the subject of its taxes, inquiring the rate thereof, how to be computed, from what time, etc.; and on the 7th day of December, 1858, that the officer wrote, stating that the corporation was not taxable under the act of 1844, and that there was no tax due from it at that time. The officers of this company had no reason to believe that it owed any tax to the State, after receiving such a notice from the fiscal officer of the government, until the passage of the act of the 1st day of May, 1861, clearly imposing the tax, and from that time forward it has been regularly paid. It is true that every one is bound to know the law, but the act of 1858 imposes the penalty for a " neglect or refusal " to make the required report. Could the conduct of this corporation be considered either? It had applied to the proper office and officer for information, and was informed that it owed nothing—did not come within the tax laws. To call this such a neglect, or refusal, as would subject it to a penalty, would confound all our notions of right and wrong, and be at war with the whole system of jurisprudence in Pennsylvania. It never was the intention of the legislature to impose a penalty in any such case. It is the spirit of the decision in The Easton Bank *v.* The Commonwealth (10 Barr, 442); that penalties will not be imposed where there are serious doubts as to the proper construction of an act of Assembly, and no intentional violation of its provisions. Many other cases might be cited to the same effect. It can scarcely be said that *no doubts* existed here, for it is declared by the legislature, in the preamble to the act of May 1st, 1861, that no doubts have arisen as to the liability of this and other similar companies to pay taxes, and provision is then made for their payment thereafter. You will, therefore, render a verdict in favor of the commonwealth, for the amount of the tax, as settled at the accountant department, for the years 1858, 1859, and 1860, *minus* a penalty charged, and

[The Commonwealth of Pennsylvania *v.* The Delaware Division Canal Co.]

will compute interest on the sum thus found, after three months from the date of that settlement, and we will reserve the other questions raised and argued in this case, to wit: 1. Was this corporation subject to any tax prior to the act of 1861? Is it absolved from all former taxation by the words of that act, or is the State barred by the several settlements annually made; and 2d. Does the settlement bear interest, the amount having been reduced by throwing off the penalties?

OPINION OF THE COURT ON THE RESERVED QUESTIONS.

The governor of this commonwealth issued his letters-patent, incorporating a company called "The Delaware Division of the Pennsylvania Canal," on the 18th day of July, 1858—under what authority we need scarcely pause to inquire, as the counsel on both sides treat it as an incorporated company. It is so considered and spoken of in the act of May 1st, 1861, but I must confess myself unable to discover any law giving such a power to the governor. It is certainly not embraced in the act of 6th of April, 1791, or its supplements, and is not authorized by the fifth section of the act of April 21st, 1858, for the sale of the public works. Possibly it may be conferred by some act which has escaped my observation. The company, after accepting and acting under such a charter of incorporation, may be estopped from denying its existence and validity; and if not utterly valid, but only voidable, it cannot be inquired into in this case—may possibly come into question when the company asserts some right under it. We have not seen or read the charter, and have it not before us. The Delaware Division of the Pennsylvania Canal was transferred to the Sunbury and Erie Railroad Company, by virtue of the act of April 21st, 1861, clear of all incumbrance except the unpaid purchase-money, and would be subject to a tax in the hands of that company from thenceforward. It probably was transferred to the present company soon after its incorporation, which should have reported to the auditor-general during the following November. At that time there was something over six months' taxes due on the dividend and capital stock in the hands of the two companies, and the established usage of the department in such cases is to charge for half a year's tax. No valid or legal reason has been presented to excuse this corporation from paying a tax on its capital stock and dividends, under the act of 1844 and prior laws, or on its capital stock under the act of April 12th, 1859. Those laws embrace all incorporated companies owning stock within the commonwealth, unless where the same are expressly excepted by the statutes. Do the settlements which have been

made, and receipts given, discharge this company from all taxes prior to that of 1861? We find that on the 5th day of December, 1861, a regular account is stated, by the department, of the taxes due for that year, and the same was paid. This appears, on its face, to have been done under the act of May 1st, 1861. Payment has also been made of the tax due each year since. It must be conceded that, in ordinary cases between individuals, a settlement or payment of subsequent years' indebtedness will be presumed to discharge prior claims. But that presumption may readily be repelled by showing that the earlier one was not included. Conceding, for the present, that an erroneous settlement made of a certain year's tax by the auditor-general and State treasurer, and payment thereof, cannot afterwards be overhauled for mistake, yet that would certainly not debar the State from presenting a claim for a tax never settled by those officers, or paid by the debtor. We think it unimportant that the tax was due for a prior year; the settlement is no bar. It plainly appears, on its face, that these years' taxes were not included. It is a legal maxim that the government is not to be injured either by the mistake or negligence of its officers; therefore the auditor-general, deciding that this corporation was not subject to taxation, and informing its officers that there was nothing due from it therefor, will not discharge the duty, but it must be paid when the mistake is discovered. In the case of the Easton Bank already cited, the auditor-general informed the bank officers that it was chargeable with only a certain amount of taxes, which was paid; yet that was held to be no bar to a new settlement and additional charge of taxes for the same year. In our opinion there is nothing in these settlements and payments which will absolve this corporation from paying the taxes now claimed.

Is the State debarred, by the act of May 1st, 1861, from claiming any tax from this corporation prior to its passage? The preamble to the statute declares that it is passed to remove doubts which have arisen relative to the liability of those corporations to which the State canals were sold to pay taxes; and the body of the act provides that they shall, "*hereafter*," be subject to the payment of a tax on their capital stock, and the second section renders them liable to the penalties imposed by the act of April 21st, 1858, for a failure to make report and furnish an appraisement. As we conceive, no reasonable doubt could ever have existed as to all of these corporations being subject to the payment of taxes, and bound to make reports as others are required to do. There was no necessity whatever for the law, and there is nothing in its words which releases them from the responsibility fixed upon them by the former statutes. Laws cannot be repealed by implication, nor should a declaratory act be so construed as to relieve a party from a clear fixed liability. This act of Assembly could

[The Commonwealth of Pennsylvania *v.* The Delaware Division Canal Co.]

not be pleaded by the corporation as a release from the payment of taxes imposed by former laws.  A mistake in the auditor-general's office, probably made by some clerk, first led to the supposition that no tax was imposed on the stock of any of these corporations, transferees of the public works, and the misapprehension which must, in law, be attributed to the officer, caused them to escape until the legislature acted on the subject.  It would have been better to have so worded the enactment as to have made them liable for the past, as well as the future, and required the arrears to be paid as well as the subsequent tax, but possibly the legislature did not take time to examine the matter, and took it for granted that there were serious doubts, and that they could not be compelled to pay, if not previously liable, which would have been correct.  As we view it, they were all liable from the date of their charter of incorporation, and this law did not relieve them.  The charge of arrears of taxes for the years 1858-9-60 is therefore right, as settled by the department.  Must interest be paid on these arrears after three months from the date of settlement?  The act of 1811 provides that " all balances due the commonwealth, on accounts settled agreeably to this act, shall bear interest from three months after date of settlement until paid."  Had no erroneous items been taken into this account, and the " balance " struck by the accounting officers been sustained, there could have been no question on this subject.  A portion of the charge has been rejected by our decision, and the defendant has, in part, sustained its appeal.  The *balance* as struck was not due.  The company could not lawfully know what amount to pay or tender, and therefore cannot be required to pay interest.  The amount actually due is for the first time fixed on the trial, and interest can, therefore, only be allowed on the judgment.  As already stated, in regard to the penalties, we do not consider that there was such default on the part of the corporation in failing to pay its taxes, after the decision of the auditor-general, and the action of the legislature, as will subject it to the payment of interest.  There must consequently be deducted from the verdict the sum of $470.96, allowed as arrears of interest, and the verdict corrected according to the point reserved, and the amount for which it should have been rendered is now fixed at nine thousand eight hundred and forty-six dollars, for which the clerk is directed to enter judgment, as of the 29th day of November, 1864.

AFFIRMED BY THE SUPREME COURT, May 25th, 1868.  Not reported.

*Meredith, for plaintiff.*

*Knox, for defendant.*